UNITED STATES *v.* DODGE & OLCOTT, INC. (No. 5015)[1]

United States Court of Customs and Patent Appeals, May 24, 1960

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Murray Sklaroff*, trial attorney, of counsel) for the United States.

*John D. Rode* for the appellee.

---

[1] C.A.D. 737.

[Oral argument April 7, 1960, by Mr. FitzGibbon and Mr. Rode]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

SMITH, Judge, delivered the opinion of the court:

This appeal from the judgment of the Customs Court (see C.D. 2102), requires us to reexamine our decision in *Dodge & Olcott, Inc.* v. *United States*, 45 CCPA 113, C.A.D. 683, rehearing denied, June 24, 1958, to determine whether that decision was based upon a clear error such that it should be overruled. The parties, pertinent facts, statutory and treaty provisions, contentions and issues here are the same as those before this court in the above cited case, so it is not necessary to restate them here.

In our previous determination of these issues, we found the plain meaning of Presidential Proclamation appearing in T.D. 51802, modifying paragraph 60 of the Tariff Act of 1930, compelled inclusion of safrol in the tariff rate reduction proclaimed.

The Government, as appellant here, now presents its exhibits A to F inclusive from which it is contended that our previous interpretation is contrary to the intent of the negotiators of the Trade Agreement. Its argument is that safrol should be excluded from the tariff rate reduction because the intent of the negotiators should control as to the meaning of the language used in the Trade Agreement.

It is the opinion of the court that the exhibits here relied upon by the Government do not establish any definite intent on the part of the negotiators of the Trade Agreement to exclude safrol from the negotiations for a reduction in duty and, in fact, seem to us to support what was otherwise expressed in the written agreement. In construing section 60, Tariff Act of 1930 as modified by GATT the first resort is to the words actually used. *Lake County* v. *Rollins*, 130 U.S. 662, 9 S. Ct. 65, 32 L. Ed. 1060; *United States* v. *Esso Standard Oil Co.*, 42 CCPA 144, C.A.D. 587.

After a careful consideration of the language used in the Trade Agreement in question, we found in *Dodge & Olcott, Inc.* v. *United States*, supra, "* * * from a literal reading of the statute and treaty that the n.s.p.f. clause in GATT does not refer to the *eo nomine* provisions in paragraph 60." We found specifically that the n.s.p.f. clause applicable to the word "other" does not refer to the *eo nomine* designation of safrol in paragraph 60.

Appellant has presented nothing here which causes us to place a different interpretation on the language of the Trade Agreement. Assuming without conceding either the admissibility or pertinency of Exhibits A to F inclusive, relied upon by appellant, they indicate, at

---

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell* pursuant to the provisions of Title 28, United States Code, Section 294(d).

most, that the trade negotiators did not specifically include safrol by name as one of the items on which reductions in duty were to be negotiated. Such expressions of intent as may be inferred from Exhibits A to F inclusive, date from a time prior to the actual signing of the Trade Agreement in question and as such cannot vary or contradict the express terms of the Agreement. What the terms of the Agreement actually mean is at least suggested in the Japanese Accession to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865 referred to in our prior opinion in *Dodge & Olcott, Inc.* v. *United States*, supra.

The statement in the said Japanese Accession is, in fact, the only positive statement before us which directly bears upon the meaning of the language of the Trade Agreement. Regardless of what may or may not have been the "intent" of the negotiators of the Trade Agreement, we are unwilling to substitute any such esoteric "intent" for the express language of the agreement, particularly where the said Japanese Accession to the Agreement, clearly and unmistakably states that the duty on safrol has been reduced to 30 per centum ad valorem.

We think it significant that appellant has not here pointed out wherein our earlier decision constitutes a *"clear* error" such as to justify us in now ignoring the rule of *stare decisis*. The effect of appellant's argument based on Exhibits A to F inclusive, requires us to substitute inferences based on the omission of a listing of safrol in preliminary, inconclusive documents, for express language in the Agreement itself which was clearly understood at least as of the time of the said Japanese Accession as reducing the duty on safrol.

Appellant attempts to bolster its position on this appeal by reference to a series of public documents entered as Exhibits A to E inclusive below, along with a certified copy, Exhibit F, of a letter purporting to be from one H. Arnold Quirin, identified as the "head of the United States Negotiating Team for France" to one M. Lecuyer, who was identified as "head of the French Delegation at the United Nations Conference on Trade and Employment concerning the United States—French General Trade Agreement of 1947." The public documents which constitute Exhibits A to E inclusive, were available to the parties and to this court at the time of the previous litigation of these issues. All of these public documents relate to Tariff Commission investigations made in preparation for negotiations. ■ These Tariff Commission proceedings were in no way legally binding upon or restrictive of either the negotiators or the President. There is nothing in these documents which require that an *intent* be inferred therefrom to exclude safrol from the modifications of rate declared for paragraph 60 of the Tariff Act of 1930 or that they should be given more legal significance than the literal wording of the Agreement.

While we question the admissibility of an unproven letter such as Exhibit F as evidence of any facts stated therein, we have considered it on the remote chance that there might be something in it which would be helpful in our determination of the issues presented. Exhibit F is nothing more than a written offer. This letter with its attachments contains only information which is also set forth in the above-mentioned public documents. Nothing in Exhibit F shows any specific intent to exclude safrol from the modification. Any such intent must be inferred from a failure to mention safrol *per se*.

While we always are open to consider all proper and pertinent matters which bear upon the issue of possible error in an earlier decision, such matters when presented must be clear and convincing. It is unfair both to the courts and to the parties litigant that there be a re-adjudication of issues previously determined except upon a clear and convincing showing of error. This requirement is not satisfied by a reargument of the former issues on the same or a merely cumulative record. We are unwilling to find error in a prior decision where, as here, the only reason advanced is that the party asserting the error does not agree with our prior decision.

In our previous consideration of these issues, we set out an extensive review of the legislative history and referred to it in construing the language of the Agreement here involved. *Stare decisis* compels a consistent decision in this case. The judgment of the Customs Court made in conformance with our previous determination is *affirmed*.